1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   JOE LUIS MOTA-RIVERA,                  )   1:07-cv-01161-LJO-JLT HC
                                            )
12            Petitioner,                   )   FINDINGS AND RECOMMENDATIONS
                                            )   TO DENY PETITION FOR WRIT OF
13        v.                                )   HABEAS CORPUS  (Doc. 1)
                                            )
14   JOHN V. HAVILAND, Warden,              )   ORDER DIRECTING THAT OBJECTIONS BE
                                            )   FILED WITHIN TWENTY DAYS
15            Respondent.                   )
     _____)

16

17        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254.

19                          **PROCEDURAL HISTORY**

20        Petitioner is in custody of the California Department of Corrections and Rehabilitation

21   ("CDCR")  serving an indeterminate sentence of 25-years-to-life pursuant to a judgment of the

22   Superior Court of California, County of Kern (the "Superior Court").  On July 23, 2004, Petitioner

23   pleaded guilty to and was convicted of first degree murder . (Cal. Pen. Code § 187(a)). (Doc. 27,

24   Lodged Documents ("LD") 1, pp. 178-179).   On September 9, 2004, Petitioner was sentenced to a

25   term of 25-years-to-life.  (Id., pp. 246-250).

26        Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth

27   Appellate District (the "5th DCA"), contending that the state trial court had erred in denying his

28   motion to withdraw his guilty plea.  (LD 1, 4, 6).   On May 15, 2006, the 5th DCA, in an unpublished

1   decision, affirmed Petitioner's conviction. (LD 3).   On July 18,  2006, Petitioner filed a petition for

2   review in the California Supreme Court. (LD 12). On August 23, 2006,  the state Supreme Court

3   denied Petitioner's petition for review. (LD 13).[1]

4         On August 10, 2007, Petitioner filed the instant petition, raising the following issues:  (1) the

5   trial court abused its discretion in refusing to allow Petitioner to withdraw his guilty plea; (2)

6   ineffective assistance of trial counsel in failing to conduct an adequate pre-trial investigation, and;

7   (3) ineffective assistance of trial counsel in failing to communicate all consequences of a guilty plea

8   to Petitioner before he entered his guilty plea. (Doc. 1).  Subsequently, Respondent moved to dismiss

9   grounds two and three as unexhausted. (Doc. 9).  On February 11, 2009, the Court issued Findings

10   and Recommendations to dismiss the petition as containing unexhausted grounds, i.e., grounds two

11   and three. (Doc. 17).  Petitioner was given the option to withdraw the unexhausted claims or face

12   dismissal of his petition. (Id.).   On March 12, 2009, Petitioner moved to withdraw the unexhausted

13   grounds. (Doc. 18).  On March 16, 2009, the District Judge adopted the Findings and

14   Recommendations, dismissed grounds two and three, and remanded the case to the Magistrate Judge

15   for further proceedings. (Doc. 19).  On August 27, 2009, the Court ordered Respondent to file an

16   answer as to the remaining claim.  (Doc. 21).  Respondent's answer was filed on October 21, 2009.

17   (Doc. 26).  On November 16, 2009, Petitioner filed his Traverse.  (Doc. 28).

18         Respondent concedes that the sole claim for relief in the petition has been fully exhausted.

19   (Doc. 26, p. 3).

20

21

---

22     [1]On June 21, 2005, during the pendency of his direct appeal, Petitioner filed a habeas corpus petition in the Kern
County Superior Court raising a claim of ineffective assistance of counsel on grounds other than those in the instant petition.
23 (LD 5). On July 1, 2005, the Superior Court denied the petition. (LD 7). On August 16, 2005, Petitioner filed another state
habeas petition in the 5th DCA, arguing that the Superior Court had abused its discretion in rejecting his first state habeas
24 petition. (LD 8). On August 25, 2005, the 5th DCA denied the petition with a citation to People v. Duvall, 9 Cal.4th 464
(1995). (LD 9). On September 20, 2005, Petitioner filed a state habeas petition in the California Supreme Court, alleging,
25 inter alia, that the 5th DCA had committed an "abuse of process" in denying his second petition and claiming fraud in the
denial of his motion to withdraw his guilty plea. (LD10).  The state supreme court denied the petition with a citation to
26 Duvall and In re Swain, 34 Cal.2d 300 (1949). (LD 11).   Because Petitioner fully exhausted the remaining claim in the
instant petition by presenting it to the California Supreme Court in his petition for review on direct appeal (LD 12), and
27 because Petitioner's arguments for the remaining claim are fully set forth in the petition and his Traverse, the three state
petitions filed by Petitioner have no bearing on the Court's analysis of the remaining claim and are merely set forth to provide
28 a complete chronology and to develop the full procedural context of the instant petition and its remaining claim.

1

**FACTUAL BACKGROUND**

2      A.  The Underlying Crime.

3      The specific facts of the underlying crime are not germane to a consideration of the merits of

4 Petitioner's claim.  However, for context and background, the Court will briefly summarize the

5 evidence proffered at the preliminary hearing, supplemented by excerpts from the probation report.

6      Eduardo Mota, Petitioner's son, told law enforcement officers that Petitioner, Eduardo's

7 mother Rosa, and he were at their home on January 25, 2004, when Rosa and Petitioner began to

8 argue in the couple's bedroom.  (LD 1, p. 59).   Upon hearing his mother scream, Eduardo entered

9 the couple's bedroom and saw Petitioner sitting on top of Rosa beating her in the face with a gun.

10 (LD 1, pp. 62-63).  After trying unsuccessfully to get Petitioner off of his mother, Eduardo called

11 9-1-1.   (LD 1, p. 65).  Eduardo then returned to the bedroom, but Petitioner dragged his wife into the

12 living room, threw her down, and began assaulting her again.  (LD 1, pp. 66-67).  Petitioner then

13 went into the kitchen, retrieved a screwdriver, and attempted to fix his gun, which had jammed.  (LD

14 1, p. 67).  Eduardo feared Petitioner would shoot his mother, so he left the house and shouted for

15 help.  (Id.).

16      When law enforcement officers finally approached the front of Petitioner's home, they saw

17 defendant, clothes covered in blood, standing in the doorway with a gun in his hand.  (LD 14, p. 5).

18 After officers took Petitioner into custody, they found Rosa's body covered in blood, and without

19 apparent life signs.  (Id., p. 6).   During the autopsy, law enforcement officers noted that Rosa's body

20 had an abdominal gunshot wound and her body had numerous stab wounds in the upper chest, as

21 well as facial lacerations.  (LD 1, p. 53).

22      B.  Historical Facts In The Trial Court.

23      The Court adopts the statement of facts, set forth in the "Proceedings" section of the 5th

24 DCA's unpublished decision on Petitioner's direct appeal, describing the trial court proceedings

25 following Petitioner's entry of a plea of guilty to one count of premeditated murder on July 23, 2004:

26      During the change of plea proceeding, the trial court explained to appellant that according to
        the terms of the plea agreement, he would admit the first degree murder allegation in

27      exchange for the dismissal of the remaining count and gun use allegations.  The court
        explained to appellant that he would face "an exposure and sentence of 25 years to life."  The

28

1    trial court carefully admonished appellant with his <u>Boykin/Tahl</u> rights.[2]  Appellant waived
2    each right.

3    The court explained the consequences of the plea to appellant.  The court told appellant that
     if he was placed on parole, it would be for the rest of his life.  The court admonished
4    appellant that he would be required to pay a monetary fine of up to $10,000.  The court stated
     appellant would be sentenced to prison for a term of 25 years to life.  When the court asked
5    appellant if he understood these consequences of his plea, appellant replied affirmatively.

6    The court explained other consequences of the plea including the possibility of deportation if
     appellant is not a citizen and the fact that under the three strikes law appellant's sentence for
7    a future conviction could be doubled.  The court stated that appellant had discussed this
     matter thoroughly with his trial counsel.  When the court asked whether counsel placed any
8    pressure on appellant to waive his constitutional rights, appellant replied, "No."

9    The court secured a statement from appellant that he was entering the plea freely and
     voluntarily.  Defense counsel stipulated that the preliminary hearing transcript and police
10   reports constituted a factual basis for the plea.  Appellant pled guilty to first degree murder.

11   On August 27, 2004, appellant filed a written motion to withdraw his plea.  Among the
     grounds set forth in support of the motion, appellant asserted that the trial court failed to
12   advise him that his plea was binding.  Appellant stated that he was not advised of a second
     restitution fine pursuant to section 1202.45, the consequences of a third strike conviction, and
13   other fees and sampling procedures.

14   Appellant filed a declaration setting forth the alleged deficiencies in the trial court's
     admonitions concerning the consequences of a guilty plea.  In the declaration, appellant
15   asserted he believed he had a defense to the murder allegation.  Appellant further declared he
     has language difficulties and did not have reasonable time to fully understand the meanings
16   of the trial court's admonitions.

17   On September 2, 2004, the parties submitted the matter on their pleadings without oral
     argument.  The court found that appellant had been fully advised of the consequences of his
18   plea and his constitutional rights and denied appellant's motion to withdraw his plea.

19   (LD 3, pp. 2-4).

20                                              **DISCUSSION**

21   **I.  Jurisdiction**

22       Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

23   to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of

24   the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362,

25   375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the

26   United States Constitution.  The challenged conviction arises out of the Kern County Superior Court,

27

28       [2]<u>Boykin v. Alabama</u>, 395 U.S. 238 (1969); <u>In re Tahl</u>, 1 Cal.3d 122 (1969).

U.S. District Court
E. D. California                                           4

1  which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.

2  § 2241(d).  Accordingly, the Court has jurisdiction over this action.

3       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

4  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

5  Lindh v. Murphy, 521 U.S. 320 (1997), cert. denied, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries

6  v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), cert. denied, 520 U.S. 1107 (1997), overruled on

7  other grounds by, Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed

8  after statute's enactment).  The instant proceedings were initiated by the filing of the original petition

9  on August 10, 2007, after the enactment of the AEDPA, and thus this case is governed by the

10  AEDPA.

11        **II.  Legal Standard of Review**

12       A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

13  can show that the state court's adjudication of his claim:

14       (1)  resulted in a decision that was contrary to, or involved an unreasonable
            application of, clearly established Federal law, as determined by the Supreme
15           Court of the United States; or

16       (2)  resulted in a decision that "was based on an unreasonable determination of
            the facts in light of the evidence presented in the State court proceeding.

17

18  28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S.

19  at 412-413.

20       The first prong of federal habeas review involves the "contrary to" and "unreasonable

21  application" clauses of 28 U.S.C. § 2254(d)(1).  This prong pertains to questions of law and mixed

22  questions of law and fact.  Williams v. Taylor, 529 U.S. at 407-410;  Davis v. Woodford, 384 F.3d

23  628, 637 (9th Cir. 2004).  A state court decision is "contrary to" clearly established federal law "if it

24  applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it

25  confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but

26  reaches a different result."  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor,

27  529 U.S. at 405.  A state court decision involves an "unreasonable application" of clearly established

28  federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively

1    unreasonable manner." Brown v. Payton, 544 U.S. at 141; Woodford v. Visciotti, 537 U.S. 19, 24-

2    25 (2002).

3          Consequently, a federal court may not grant habeas relief simply because the state court's

4    decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

5    Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  Section

6    2254(d)(1)'s reference to "clearly established Federal law" refers to "the governing legal principle or

7    principles set forth by [the Supreme Court] at the time a state court renders its decision." Lockyer v.

8    Andrade, 538 U.S. at 64; Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005).

9          The second prong of federal habeas review involves the "unreasonable determination" clause

10   of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

11   Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under

12   § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

13   claims "resulted in a decision that was based on an unreasonable determination of the facts in light of

14   the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520;  Jeffries v.

15   Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible,

16   thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").

17   A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be

18   debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir.

19   2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

20         The AEDPA also requires that considerable deference be given to a state court's factual

21   findings.  "Factual determinations by state courts are presumed correct absent clear and convincing

22   evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and

23   based on a factual determination will not be overturned on factual grounds unless objectively

24   unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-

25   El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of

26   historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943,

27   976-077 (2004).

28         To determine whether habeas relief is available under § 2254(d),  the federal court looks to

U.S. District Court
E. D. California

1  the last reasoned state court decision as the basis of the state court's decision.  See Ylst v.

2  Nunnemaker, 501 U.S. 979, 803 (1991);  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

3  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its

4  decision, the federal habeas court conducts "an independent review of the record...to determine

5  whether the state court [was objectively unreasonable] in its application of controlling federal law."

6  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853

7  (9th Cir. 2003).  "[A]lthough we independently review the record, we still defer to the state court's

8  ultimate decisions."  Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court

9  denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the

10  deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's

11  claims de novo.  Id.

12         The prejudicial impact of any constitutional error is assessed by asking whether the error had

13  "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.

14  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding

15  that the Brecht standard applies whether or not the state court recognized the error and reviewed it

16  for harmlessness).  Some constitutional errors, however, do not require that the petitioner

17  demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v.

18  Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA

19  alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

20  Strickland prejudice standard, outlined below, is applied and courts do not engage in a separate

21  analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002);

22  Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

23         **III.  Review of Petitioner's Claim.**

24         The instant petition itself alleges the following as grounds for relief:

25    **Ground One**          **"The court abused its discretion by refusing to allow**
                              **petitioner to withdraw his guilty plea in that petitioner**
26                            **showed good cause and the evidence was more than**
                              **sufficient to grant the motion."**

27

28         At first blush, Petitioner's claim appears to sound only in state law.  Generally, issues of state

1   law are not cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 67 (1991)("We

2   have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"),

3   *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349

4   (1993)(O'Connor, J., concurring)("mere error of state law, one that does not rise to the level of a

5   constitutional violation, may not be corrected on federal habeas").  Indeed, federal courts are bound

6   by state court rulings on questions of state law.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th

7   Cir.), *cert. denied*, 493 U.S. 942 (1989).

8          However, in his memorandum in support of the petition, Petitioner argues that his trial

9   attorney provided ineffective assistance in violation of the Sixth Amendment by failing to correctly

10   advise Petitioner regarding his maximum exposure to a prison term and in failing to adequately

11   investigate and raise what Petitioner contends is a valid defense to premeditated murder, i.e., heat of

12   passion.  (Doc. 2, pp. 15-16).  Thus, the Court agrees with Respondent that the remaining claim

13   should be viewed as a claim for ineffective assistance of trial counsel.[3]  In so doing, the Court also

14   agrees with Respondent that the claim should be denied.

15          **A.   The Legal Standard For Ineffective Assistance of Counsel**.

16          As mentioned, Petitioner must establish that the state court adjudication was contrary to or an

17   unreasonable application of clearly established federal law, as determined by the United States Supreme

18   Court.  28 U.S.C. § 2254(d)(1).  In the context of a claim of ineffective assistance of counsel, federal law

19   is clearly established under the standards announced in  Strickland v. Washington, 466 U.S. 668 (1984).

20          In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must

21   consider two factors.  Strickland, 466 U.S. at 687; Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527

22   (2003); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

23   performance was deficient, requiring a showing that counsel made errors so serious that he or she was

24   not functioning as the "counsel" guaranteed by the Sixth Amendment.  Strickland, 466 U.S. at 687.  To

25   establish this, the petitioner must show that counsel's representation fell below an objective standard of

26   reasonableness.  Id. at 688.  The petitioner must identify counsel's alleged acts or omissions that were

27

28          [3]To the extent that Petitioner is also contending that the trial court erred in failing to advise him of his potential
maximum sentence based on dismissed enhancements, the Court addresses that issue in footnote 5, *infra*.

1    not the result of reasonable professional judgment considering the circumstances.  Id.; United States v.

2    Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is

3    highly deferential, and a court indulges a strong presumption that counsel's conduct falls within the wide

4    range of reasonable professional assistance.  Strickland, 466 U.S. at 687; Sanders v. Ratelle, 21 F.3d

5    1446, 1456 (9th Cir. 1994).

6            Second, a petitioner must show prejudice, i.e., whether counsel's errors were so egregious as to

7    deprive him of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688, 694.  To establish

8    prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's

9    unprofessional errors, the result of the proceeding would have been different.  A reasonable probability

10   is a probability sufficient to undermine confidence in the outcome."  Id.; Williams v. Taylor, 529 U.S.

11   362, 391 (2000).  In so doing, the Court must also evaluate whether the entire trial was fundamentally

12   unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United

13   States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

14           The Court does not need to consider the two elements in any particular order, nor does the Court

15   need to consider both if the showing on either one is insufficient.  Strickland, 466 U.S. at 697.  A court

16   need not determine whether counsel's performance was deficient before examining the prejudice

17   suffered by the petitioner as a result of the alleged deficiencies.  Id.   The object of an ineffectiveness

18   claim is not to grade counsel's performance.  Id.  "If it is easier to dispose of an ineffective claim on the

19   ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."

20   Id.

21           Under the AEDPA, which was enacted after Strickland, habeas relief may only be granted if the

22   state court decision unreasonably applied this general Strickland standard for ineffective assistance.

23   Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1418-1419 (2009).  Accordingly, the question

24   "is not whether a federal court believes the state court's determination under the Strickland standard was

25   incorrect. "but whether that determination was unreasonable–a substantially higher threshold." Schriro

26   v. Landrigan, 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In

27   effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the

28   state court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v.

1   Gentry, 540 U.S. 1, 5, 124 S.Ct. 1 (2003).  Moreover, because the Strickland standard is a general

2   standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied

3   that standard.  See Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140 (2004)("[E]valuating

4   whether a rule application was unreasonable requires considering the rule's specificity.  The more

5   general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

6

7           With these principles in mind, the Court now turns to an analysis of Petitioner's claim of

8   ineffective assistance of counsel.

9           **B.  Court of Appeal's Decision**.

10          The last reasoned decision by a state court regarding this claim was in the 5th DCA's unpublished

11  opinion.  In that decision, addressing Petitioner's motion to withdraw his plea because of counsel's

12  failure to advise him of a "heat of passion" defense, the appellate court concluded as follows:

13          Appellant contends the trial court erred in denying his motion to withdraw his plea.  Appellant
            argues the trial court failed to explain to him the range of sentence he faced for dismissed
14          allegations as well as for first degree murder.  Appellant further argues his trial counsel was
            ineffective for failing to counsel him concerning a potential heat of passion defense for the first
15          degree murder allegation.

16          ...

17          A defendant who pleads guilty demonstrates prejudice cause by counsel's incompetent
            performance in advising him or her to enter the plea by establishing that a reasonable probability
18          exists that, but for counsel's incompetence, he or she would not have pled guilty and would have
            insisted on proceeding to trial.  (Citation omitted.)  The defendant's assertion that he or she
19          would not have pled guilty must be corroborated by objective evidence...

20          The only evidence in support of appellant's contention that he would not have entered a guilty
            plea had he been informed of a heat of passion defense comes from his declaration in his motion
21          to withdraw his plea.  The only fact appellant tenders in his declaration is his belief that he had
            a defense to the murder allegation.  Appellant does not even state that his defense would have
22          been based on heat of passion.  Furthermore, there is no evidence to corroborate appellant's
            assertion in his declaration.  Appellant has failed to show that it is reasonably probable that he
23          would have forgone the distinctly favorable outcome he obtained by entering a guilty plea....

24
    (LD 3, pp. 5-6).
25
            **C.  Petitioner Was Not Denied the Effective Assistance of Counsel**.
26
            Petitioner contends that his trial counsel was ineffective in failing to correctly advise Petitioner
27
    regarding his maximum prison exposure based on the amended charges and because counsel failed to
28

1   adequately investigate and present a defense to premeditated murder of "heat of passion."  The Court

2   disagrees.

3               1.   Counsel's Failure to Advise Petitioner On Heat of Passion Defense.

4           Petitioner has not shown that his trial counsel's conduct fell below the requisite standard of

5   reasonableness for failing to present a defense of heat of passion because he has not established that such

6   a defense was available to him under California law.  California law provides that there are three types

7   of manslaughter, i.e., voluntary, involuntary, and vehicular.  Cal. Pen. Code § 192.  In order to reduce

8   premeditated murder to heat of passion manslaughter, a defendant must demonstrate provocation *and*

9   heat of passion.  People v. Steele, 27 Cal. 4th 1230, 1252 (2002); People v. Logan, 174 Cal. 45, 49

10  (1917); Cal. Pen. Code §192(a).  The provocation must be of such magnitude that "an average, sober

11  person would be so inflamed that he or she would lose reason and judgment."  People v. Lee, 20 Cal.4th

12  47, 60 (1999); People v. Ogen, 168 Cal.App. 3d 611, 621 (1985) (provocation that is of so little

13  consequence that it would not impair ordinarily reasonable person's ability to form malice is not

14  sufficient to reduce killing from murder to manslaughter).

15          The provocation may be anything that arouses great fear, anger, or jealousy.  Logan, 174 Cal. at

16  49; People v. Fenenbock, 46 Cal.App.4th 1688, 1704 (1996).  Additionally, the provocation required

17  must be caused *by the victim or must result from conduct reasonably believed by the defendant to have*

18  *been engaged in by the victim*.  People v. Manriquez, 37 Cal.4th 547, 583 (2005); Lee, 20 Cal. 4th at 59.

19  Thus, heat of passion has both a subjective and an objective component: A defendant must actually kill

20  in the heat of passion, and the circumstances giving rise to the passion must be such that they would

21  arouse passion in the mind of a reasonable person.  People v. Steele, 27 Cal.4th 1230, 1253 (2002).

22          Petitioner has not established any of these prerequisites of California law for provocation.

23  Petitioner alludes to an "argument" between Rosa and himself; however, without more, a mere

24  "argument" is legally insufficient to satisfy California's requirement for provocation on the part of the

25  victim.  People v. Lujan, 92 Cal.App.4th 1389 (2001), is instructive on this point.  In that case, defendant

26  was convicted of one count of stalking and two counts of first degree murder for killing his estranged

27  wife and her neighbor, with whom she had become romantically involved.  At the time of the killings,

28  defendant and his wife were separated and she had filed for dissolution of the marriage.  Defendant,

1  while hiding behind a truck near his wife's home, saw his wife and her neighbor embrace and then enter

2  the neighbor's house.  Defendant believed that they had intercourse.  When they came out of the house,

3  defendant attacked and killed both of them.

4        Defendant argued on appeal that the jury should have been instructed on voluntary manslaughter

5  on a heat of passion theory, but the Court of Appeal affirmed, holding that neither of the elements of heat

6  of passion manslaughter had been proved.  As to subjective heat of passion provocation, the court

7  concluded that "[i]t is not provocative conduct for a woman who has been separated from her estranged

8  husband for four or five months and who has filed a petition for dissolution of marriage to later develop

9  a romantic relationship with another individual." Id. at 1414.  As to the objective component, the court

10  held that defendant's behavior was not the conduct of a reasonable person of average disposition; rather,

11  it was the behavior of an obsessed stalker. Id. at 1415.

12        Here, of course, no evidence was presented that Rosa was engaged in a romantic affair with

13  another person or that she had initiated dissolution proceedings.  However, out of fear of Petitioner and

14  his past abusive behavior, she had spent the night at a relative's home and had returned to the family

15  home, where Petitioner resided, only to retrieve clothes.  There is no evidence in the record that, while

16  she was there, Rosa said or did anything to provoke Petitioner other than attempt to avoid him.

17        In fact, there was no evidence that Rosa wanted to interact with Petitioner at all, much less to

18  engage him in an argument.  Rosa's purpose in going to the family home was only to obtain enough

19  clothes to vacate the family home and to stay with relatives, an intention that, if successful, would have

20  avoided any confrontation with Petitioner whatsoever.  Eduardo told law enforcement authorities that

21  he heard Rosa tell Petitioner she did not want to argue and instead wanted to leave the family home

22  before being assaulted by Petitioner.  (LD 14, p. 6).  Moreover, as Respondent notes, Rosa's history of

23  prior abuse at the hands of Petitioner and the fact that she had recently left the family home to stay with

24  Eduardo's grandmother out of fear of Petitioner further support the conclusion that Rosa would be

25  reluctant to provoke Petitioner.  (LD 1, pp. 67-68; LD 14, p. 6).  Finally, in his statement to law

26  enforcement officers, Eduardo mentioned no effort by Rosa to either assault Petitioner or arm herself.

27  (LD 14, pp. 8-9).

28        Given the foregoing absence of any evidence of legal provocation by the victim, Petitioner has

1  not established that he had a viable defense of heat of passion.  Petitioner repeatedly emphasizes that he

2  was upset and angry at the time he committed the offense.  Although such evidence conceivably could

3  satisfy one aspect of the requirement, i.e., actual heat of passion, as mentioned, no evidence was

4  presented to satisfy the other aspect of the requirement, i.e., provocation by Rosa.  Thus, the defense was

5  not a "viable" one.  Without such a viable defense, Petitioner's claim of ineffective assistance of trial

6  counsel based on counsel's failure to advise Petitioner of such a defense, fails to meet the first Strickland

7  requirement, i.e., that counsel's representation fell below the acceptable standard of reasonableness.  See

8  James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994)(no ineffective assistance of counsel based upon counsel's

9  failure to file motion to strike where such a motion would be futile); Morrison v. Estelle, 981 F.2d 425,

10  429 (9th Cir. 1992)(finding that a claim of ineffective assistance of appellate counsel on the ground that

11  counsel failed to argue inadequate notice of the charge must fail because counsel "would not have been

12  successful"); United States v. Zazzara, 727 F.2d 135, 138 (9th Cir. 1980)(finding that a claim of

13  ineffective assistance of trial counsel on the ground that counsel failed to move to suppress an indictment

14  must fail because such a motion would have been futile).[4]

15      Nor does Petitioner's claim meet Strickland's second prong, prejudice.  To show prejudice in the

16  plea context, Petitioner must demonstrate that "there is a reasonable probability that, but for counsel's

17  errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart,

18  474 U.S. 52, 59, 106 S.Ct. 366 (1985).  "[W]here the alleged error of counsel is a failure to advise the

19  defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry

20  will depend largely on whether the affirmative defense likely would have succeeded at trial."  Id.; see

21  also United States v. Keller, 902 F.3d 1391, 1395 (9th Cir. 1990); Smith v. Mahoney, 611 F.3d 978, 989

22  (9th Cir. 2010).

23      As discussed previously, Petitioner has presented no evidence, and the Court cannot glean any

24  evidence from the record, to support the proposition that Petitioner's wife provoked Petitioner's assault

25

26      [4]The Court also agrees with Respondent that Petitioner's claim should be rejected because it is conclusory and
27  unsupported by specific facts. (Doc. 26, p. 15).  See, e.g., Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995)("[c]onclusory
    allegations which are not supported by a statement of specific facts do not warrant habeas relief"). Petitioner has presented
28  no evidence from either his trial counsel or anyone else regarding his counsel's purported failures.  Instead, Petitioner relies
    solely on his own self-serving declaration and assumptions about the legal efficacy of a "heat of passion" defense.

on her.  Thus, there was insufficient evidence to support a defense of "heat of passion."  Moreover, as

Respondent correctly points out, there was substantial evidence to support a finding by the jury that

Petitioner acted with premeditation in murdering his wife.  From these circumstances, the Court can only

conclude that a "heat of passion" defense would not have succeeded at trial.  Accordingly, Petitioner has

not established Strickland prejudice.  Id.

      2.  Failure To Advise Petitioner Of His Maximum Prison Exposure.

Petitioner also contends that his trial attorney failed to properly advise him of his "maximum

exposure" before he pled guilty.  Again, the Court disagrees.

Petitioner was originally charged not only with premeditated murder but also with a gun use

enhancement, Cal. Pen. Code §12022.53(d), which carried a consecutive 25-years-to-life prison term.

(LD 3, p. 2, n. 2).   The information and amended information changed that allegation to a violation of

Cal. Pen. Code § 12022.53( c), which adds a consecutive prison term of twenty years.  (Id.).   At the

change of plea hearing, the amended enhancement, as well as other enhancements, were dropped in

exchange for Petitioner's plea of guilty to the charge of premeditated murder.  (LD 3, p. 2).  Petitioner

was then sentenced on that conviction to a twenty-five-years-to-life term in prison.

In rejecting Petitioner's claim that he had been improperly advised by his attorney and the trial

court as to the "maximum exposure" under the dismissed enhancements, the 5th DCA held as follows:

> Trial courts must advise the defendant of the direct consequences of conviction including the permissible range of punishment provided by statute.  (Bunnell v. Superior Court (1975)13 Cal.3d 592, 605; People v. Avila (1994) 24 Cal.App.4th 1455, 1458.)  The trial court did admonish appellant with the maximum prison term for first degree murder–25 years to life. Appellant argues the court should have further advised him of the total prison term he faced as to all of the *dismissed* allegations.  We have found no legal support for this more particularized admonition and appellant cites to none.  Appellant was accurately advised of the penal consequences of his guilty plea and the trial court fulfilled its duty in doing so.

(LD 3, pp. 4-5)(Emphasis in original).

Petitioner contends that his original exposure was two consecutive 25-years-to-life sentences,

for a total of fifty years to life.  (Doc. 2, p. 10).  He alleges that the charging document was amended to

"significantly" reduce his exposure, i.e.,  to only 46 years to life.  (Id.).  Petitioner appears to reasons

that, without properly understanding his maximum exposure, his plea of guilty was not knowing and

voluntary.  The Court disagrees.

1    As the 5th DCA pointed out, a trial court has no obligation to advise a defendant about charges

2    that have already been dismissed.  Petitioner cites to no such authority, either under California law or

3    federal law,  and the Court is unaware of any such authority.[5]  Petitioner does not contest the fact that

4    he was adequately advised by the trial court and by his attorney as to the maximum exposure for the

5    premeditated murder charge to which he pleaded guilty.  If the trial court itself is not obligated under

6    California law to advise a criminal defendant of the maximum prison term based on all charged and

7    uncharged, or dismissed, allegations, then clearly defendant's counsel has no legal obligation to do so.

8    Thus, Petitioner has not established that his counsel failed to adequately advise him regarding the

9    possible prison "exposure" resulting from his guilty plea.

10    Second, Petitioner has not established prejudice.  Even assuming, arguendo, that trial counsel

11    was remiss in failing to advise Petitioner regarding the dismissed enhancements, Petitioner has not

12    shown that he would have foregone pleading guilty, for which he faced a 25-years-to-life sentence, and

13    risked a jury trial, in which he would face a maximum exposure of 46-years-to-life.  Nor, under the

14    above circumstances,  would it be likely, or even reasonable, that Petitioner would have gone to trial,

15    if properly advised, because of the 4-year differential between his 46-year maximum exposure under the

16    amended information and his 50-year exposure under the amended complaint.  Except for his innuendoes

17    and self-serving declarations, there is nothing in the record to suggest that Petitioner's maximum

18    exposure from premeditated murder *plus some or all of the dismissed enhancements* would ever have

19    been *more attractive* to Petitioner than his maximum exposure for the premeditated murder plea *alone*.

20

21

22    [5] To the extent that Petitioner is contending that the trial court failed to properly advise him regarding the sentencing

23    maximums for dismissed charges, this argument, too, must fail.  The 5th DCA has definitively held that California law does
not contain such a requirement. (LD 3, pp. 4-5).  This Court is bound by a state court's determination of state law. Oxborrow

24    v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).  Nor has Petitioner shown that there is
"clearly established" *federal* law, a predicate requirement under 28 U.S.C. § 2254(d)(1), regarding a trial court's duty to

25    advise a defendant, pre-plea, of his exposure on charges or enhancements that are being dismissed as part of the plea
agreement. "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply

26    a specific legal rule that has not been squarely established by" the United States Supreme Court. Knowles v. Mirzayance,
129 S.Ct. at 1419. The United States Supreme Court has never "clearly established" anything remotely akin to the rule

27    proposed by Petitioner.  Since Petitioner does not contend that the state court adjudication resulted in a decision that "was
based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28

28    U.S.C. § 2254(d)(2), he therefore cannot, under the AEDPA, prevail on this claim insofar as it alleges error by the trial court
itself.

1   Accordingly, Petitioner has failed to meet either prong of the Strickland standard regarding his

2   claim that he was improperly advised of his maximum possible prison term.  In sum, therefore, the state

3   court adjudication was neither contrary to nor an unreasonable application of clearly established federal

4   law regarding the purported ineffective assistance of trial counsel.  Thus, Petitioner's claims should be

5   denied and the petition dismissed with prejudice.

6   **RECOMMENDATION**

7   Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus

8   (Doc. 1), be DENIED with prejudice.

9   This Findings and Recommendation is submitted to the United States District Court Judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

11   Rules of Practice for the United States District Court, Eastern District of California.  Within twenty (20)

12   days after being served with a copy of this Findings and Recommendation, any party may file written

13   objections with the Court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be

15   served and filed within ten (10) court days (plus three days if served by mail) after service of the

16   Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

17   (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the

18   right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19

20   IT IS SO ORDERED.

21   Dated:   **September 9, 2010**                                  **/s/ Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

U.S. District Court
E. D. California

16